UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELVIN REID,

      Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____/

No. 08-5249 PJH

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

      Plaintiff Melvin Reid ("Reid") seeks judicial review of the decision by the Social Security Commissioner ("Commissioner"), denying his claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment, and Reid's alternative motion to remand. Having read the parties' papers and administrative record, and having carefully considered their arguments and relevant legal authority, the court REMANDS this case to the ALJ for further proceedings consistent with the court's order.

**BACKGROUND**

      Reid filed an application for supplemental security income ("SSI") payments on May 12, 2006. A.T. 12. He alleged disability beginning January 31, 1992. Id. The Commissioner denied his application initially, and again upon reconsideration on March 8, 2007. A.T. 12. Administrative Law Judge Benjamin F. Parks ("the ALJ") held a hearing on January 16, 2008. Id. On March 25, 2008, the ALJ found that Reid had not been disabled within the meaning of the Social Security Act from May 12, 2006, the date Reid filed an application for SSI, through the date of his decision. A.T. 12-22. Reid requested that the

Appeals Council review the ALJ's decision and the Appeals Council denied his request for review on September 25, 2008, making the decision of the ALJ the final decision of the Commissioner. A.T. 1-6. On November 19, 2008, Reid brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's hearing, Reid was 49 years-old. See Pl.'s Motion for Summary Judgment ("MSJ") 3. He previously worked in the housekeeping department of a hotel, and has a high school education. A.T. 146, 150. Reid alleges both physical and mental impairments, including "arthritis, depression, joint problems, back, & right eye." A.T. 145.

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that a claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(I). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ compares the claimant's impairment to a listing of impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to

1  the fourth step to consider whether the claimant has sufficient "residual functional capacity"
2  ("RFC") to perform her past work despite the limitations caused by the impairment.  See 20
3  C.F.R. § 404.1520(a)(iv).  If the claimant cannot perform her past work, the Commissioner
4  must show, at step five, that the claimant can perform other work that exists in significant
5  numbers in the national economy, taking into consideration the claimant's "residual
6  functional capacity, age, education, and past work experience."  See 20 C.F.R. §
7  404.1520(a)(4)(v).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. Id.

**ALJ'S FINDINGS**

The ALJ determined that Reid was not disabled at step five of the disability evaluation. A.T. 25. The ALJ first concluded that Reid had not engaged in any substantial gainful activity since May 12, 2006. A.T. 14. At step two, the ALJ found that Reid had the following severe impairments: "degenerative disc and joint pain, depression, substance abuse in unknown state of remission." A.T. 14. At step three, the ALJ concluded that Reid's mental impairments did not meet the requirements of listings 12.04 or 12.09, and that his physical impairments did not meet the requirements of listing 1.04. A.T. 14.

At step four, the ALJ determined Reid's RFC. A.T. 15. The ALJ made two separate RFC determinations, one considering the effects of substance abuse, and one without the effects of substance abuse.[1] The ALJ found that with the effects of substance abuse, Reid has the RFC to perform light work with occasional stooping, crawling and bending, and with the following restrictions: moderate restriction in activities of daily living; mild restriction in

---

[1] The ALJ was required by law to consider Reid's RFC without separating the effects of substance use from his remaining impairments. 20 C.F.R. §§ 404.1535, 416.935. However, as discussed below, the ALJ improperly segregated the effects of substance use before concluding the five-step disability analysis.

3

social functioning; and moderate restriction in concentration, persistence and pace, which equates to a 40-50% decrease in detailed and complex as well as simple and repetitive tasks. A.T. 15. The ALJ further found that there were no episodes of decompensation, and that Reid requires limited public contact. A.T. 15.

Without the effects of substance abuse, however, the ALJ concluded that Reid has the RFC to perform light work, with restrictions including moderate restrictions in activities of daily living; mild restrictions in social functioning; and mild restrictions in concentration, persistence and pace. A.T. 16. The restrictions in concentration, persistence and pace equate to a 40-50% decrease in detailed and complex tasks, and a 10% decrease in simple and repetitive tasks. A.T. 16. The ALJ also concluded that there are no episodes of decompensation, and that Reid requires limited public contact. A.T. 16. Thus, the ALJ found that when considering the effects of substance use, Reid's RFC required moderate restriction in concentration, persistence and pace, equating to a 40-50% decrease in both detailed and complex, as well as simple and repetitive tasks. Without the effects of substance abuse, however, Reid's RFC required only mild restrictions in concentration, persistence and pace, equating to a 40-50% decrease in detailed and complex tasks, and only a 10% decrease in simple and repetitive tasks.

Next, the ALJ turned to the medical evidence in the record. Reid has been treated at the Maxine Hall Health Center in San Francisco since 1999. A.T. 17. According to medical notes and Reid's own statements, Reid has been struggling with alcohol addiction for several years. A.T. 17. On December 5, 2002, Dr. James, Reid's primary care physician at the Center, performed an examination. A.T. 17. Dr. James found that Reid had a small growth on his eye and hand eczema, both of which she treated. A.T. 17. In 2003, medical professionals at the Maxine Hall Health Center examined Reid several times; Dr. James performed the majority of these examinations. A.T. 269-74. The medical notes from each of these visits indicate that Reid was "still drinking" but that he was trying to drink less. A.T. 269-74.

On April 9, 2004, Reid was examined again at the Center, and the examining doctor

4

found that Reid had positive tenderness in the lumbar muscles with radiation of pain to the right leg. A.T. 17. The doctor recommended lumbar x-rays. A.T. 17. During this appointment, Reid reported that he used crack and alcohol occasionally. A.T. 17.

During a July 11, 2005 appointment with Dr. James, Reid complained that he had been experiencing arthritis symptoms for more than ten years, as well as lower back and finger pain, and locking up of his knees. A.T. 17. Dr. James ordered lumbar spine films again. A.T. 17. There are no additional medical records for Reid until June 2006.

On June 15, 2006, Dr. James examined Reid at the Maxine Hall Center. Reid reported that he was caring for his diabetic mother, and requested Tylenol with codeine for joint pain in his hands. A.T. 17. At this time, Reid was able to walk one mile without problems, and could go up and down stairs "ok." A.T. 17. On June 26, 2006, Reid reported that he had lost his medication and requested additional Tylenol, but additional medication was not provided. A.T. 17.

Dr. Pon,[2] a physical medicine and rehabilitation specialist at the Bay View Medical Clinic, performed a consultative orthopedic evaluation on June 26, 2006. A.T. 17, 214-17. Doctor Pon reported that spinal x-rays from August 19, 2005 showed slight degenerative changes in the posterior lower lumbar joints, L4 through S1. A.T. 216. Dr. Pon also found that Reid had atrophy of his left thigh, and that his bilateral hand pain with occasional numbness indicated "possible degenerative arthritis, possible carpal tunnel syndrome, or a combination of these." A.T. 216. Dr. Pon further opined that Reid could walk at least short distances without his walking stick for a total of six hours during an eight-hour workday, and could sit for a total of six hours during an eight-hour workday. Moreover, he could perform limited stooping, crouching, kneeling and squatting occasionally. He could climb stairs on an occasional to frequent basis, with limited crawling and climbing ladders. Dr. Pon imposed no restriction in performing bilateral pushing and pulling arm-hand control. Without his walking stick, Reid could lift and carry frequently 10+ pounds and occasionally

---

[2] Although the record is not clear, the court presumes that Dr. Pon and Dr. El-Sokkary, whose opinion is discussed below, are agency examiners.

20+ pounds.  With his walking stick, he could lift and carry occasionally and frequently 10+ pounds.  Dr. Pon imposed no limitation on reaching bilaterally, and found no functional impairment of his right or left hand.  Additionally, Reid could perform gross and fine manipulative tasks with both hands on a frequent basis.  A.T. 216.

Dr. El-Sokkary, Psy.D., performed a consultative psychological examination on July 5, 2006.  A.T. 18.  Reid reported that he was an alcoholic and that he struggled with depression, anxiety, and moodiness throughout the day.  A.T. 18.  Dr. El-Sokkary opined that Reid could understand, remember and perform simple repetitive tasks.  A.T. 18.  Dr. El-Sokkary further noted that Reid was capable of the minimum level of concentration, persistence and pace to do basic repetitive tasks, but would have some difficulties in appropriately interacting with supervisors and co-workers.  A.T. 18.

In addition, the ALJ noted that state agency examiners opined that Reid's only mental impairment was substance abuse.  A.T. 18.  Other state agency examiners agreed with Dr. Pon that Reid could perform light work with occasional postural restrictions.  A.T. 18.  His mental RFC required moderate restrictions in some areas, including in detailed tasks and in attention, concentration, and sustaining a normal workday and setting goals. A.T. 18.  Nevertheless, the examiners found that he could perform simple repetitive work. A.T. 18.

On June 8, 2007, Reid was examined for intake evaluation through the Department of Public Health, Community Behavioral Health Services at Westside Community Services. A.T. 18.  During his appointment, Reid complained of sleep disturbance, agitation, hallucinations and chronic pain.  Reid denied alcohol or drug use, but the medical records revealed alcohol and cocaine use.  A.T. 18.  Five days later, on July 13, 2007, Dr. Albucher, M.D., Reid's treating physician, diagnosed Reid with alcohol and cocaine dependence, and ruled out cognitive disorder due to motor vehicle accidents or substance abuse and post traumatic stress disorder.  A.T. 18.  Reid's Global Assessment of

Functioning ("GAF")³ was 50, and no medications were prescribed.  A.T. 18.

On December 13, 2007, Dr. Albucher completed a questionnaire based on his visits with Reid since July 13, 2007.  Dr. Albucher diagnosed Reid with major depressive disorder with mild psychotic features and substance abuse in remission.  A.T. 18.  At this time, Reid's GAF was 45.  A.T. 18.  Dr. Albucher further opined that Reid's condition required moderate limitation in activities of daily living and social functioning, and marked limitation in maintaining concentration, persistence and pace.  A.T. 19.  He noted that Reid would need to be absent from work due to paranoia, and that symptoms would exist regardless of alcohol use.  A.T. 19.

In a January 31, 2008 letter, Dr. Albucher and Sunita Mehta, Doctoral Intern Therapist, evaluated Reid based on weekly visits with him beginning July 13, 2007.  Over the duration of their visits with Reid, Drs. Albucher and Mehta never observed signs that he was under the influence of drugs or alcohol, and Reid consistently reported minimal alcohol use and no drug use.  A.T. 19.  Neither doctor, however, monitored his drug or alcohol use through medical testing.  A.T. 19.

At the hearing before the ALJ, medical expert Dr. Jonas testified that Reid suffered from back and knee pain, and issued a "minor finding" that his left leg was slightly weaker than the right.  A.T. 19.  The examination was otherwise normal.  A.T. 19.  Dr. Jonas testified that no clear limitations existed, and that Reid could perform a medium range of work.  A.T. 19.  With respect to mental impairments, Dr. Jonas observed evidence of alcohol and cocaine abuse, as well as possible prescribed medication abuse.  A.T. 19.  Dr. Jonas opined that Reid's substance abuse was "active" under listing 12.09, through May 2007.  As a result of the substance abuse, Dr. Jonas testified that Reid's activities of daily living, social functioning, and concentration, persistence and pace were moderately restricted.  A.T. 19.

---

³ The GAF Scale is a 100-point scale that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp. A GAF of 41-50 indicates severe symptoms, or any serious impairment in social, occupational, or school functioning. Id.

As part of his step four analysis, the ALJ then turned to Reid's own statements, which he found to be less than credible. A.T. 19. The ALJ noted that despite Reid's statements to medical professionals over the years that he only minimally used drugs and alcohol, the clinic records in fact show a greater use. A.T. 19. Moreover, the ALJ noted that Reid reported in 2006 that he abuses alcohol whenever he has money and that this pattern has continued for many years since he was a teenager. A.T. 19. Thus, the ALJ accorded limited weight to Reid's treating psychiatrist's opinion and more weight to the opinions of the Social Security Administration's medical expert, consultative psychiatric examiner, and state agency examiner. A.T. 20. Ultimately, the ALJ concluded that

> "there is no objective evidence to show that claimant's longstanding substance abuse is in remission. . . . Further, . . . even if claimant has been clean and sober since July 13, 2007, he has not remained so for a sufficient period of time to determine whether or not his symptoms are the basis of an independent mental disorder, or as a result of his substance abuse. This is consistent with Dr. El-Sokkary's diagnosis of Alcohol Related Disorder NOS." A.T. 20.

Turning to Reid's physical impairments, the ALJ concluded that there was no evidence to support Reid's allegations that he was involved in three motor vehicle accidents in the 1990s, which allegedly resulted in joint pain. A.T. 20. The ALJ noted that while some of Reid's medical records refer to post traumatic stress disorder or traumatic brain injury, there are no supporting records for this information. Additionally, the ALJ noted that the objective clinical findings are limited to an August 2005 lumbar x-ray which showed mild degenerative changes and mild left thigh atrophy. A.T. 20. However, nothing suggested cord or nerve root impingement based on that image, and no MRIs or other evidence provide further imaging. A.T. 20. Moreover, the ALJ emphasized that Reid missed several appointments for various treatments and examinations, and repeatedly indicated that he was able to walk for long periods of time without difficulty. A.T. 20.

In concluding step four of his analysis, the ALJ found that Reid has no past relevant work experience. A.T. 21. In light of this conclusion, the ALJ noted that transferability of job skills is not an issue because Reid does not have past relevant work.

Finally, in step five, the ALJ determined that Reid is not disabled within the meaning of the Social Security Act. The vocational expert testified that given Reid's age, education, work experience, and RFC, without the effects of alcohol abuse, Reid would be able to perform the requirements of representative occupations such as general assembler filter (DOT 729.687-018), with 7500 jobs regionally and 750,000 jobs nationally; and labor (not construction), cleaner, and polisher (DOT 709.687-010), with 7700 to 7800 jobs regionally and 700,000 jobs nationally. A.T. 22. However, based on the expert testimony, the ALJ concluded that taking into consideration Reid's substance abuse problem and given the assigned RFC, there would be no jobs available. A.T. 22. Thus, the ALJ found that substance abuse would be material to a finding of disability, and therefore concluded that Reid had not been under a disability, as defined in the Social Security Act, since May 12, 2006, the date Reid filed his application. A.T. 20.

**STANDARD OF REVIEW**

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (citing Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).

When the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by this court on appeal. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993). Thus, this court must consider the evidence before both the ALJ and the Appeals Council in reviewing the ALJ's decision. Id.

**ISSUES**

Reid seeks review of the Commissioner's denial of SSI benefits, arguing that:

(1) Drug addiction and alcoholism were not contributing factors material to the ALJ's determination of disability;

(2) the ALJ should have accorded the opinion of Dr. Albucher, Reid's treating physician, controlling weight; and

(3) the court should grant summary judgment or, in the alternative, remand to the ALJ for another hearing.

**DISCUSSION**

**1. Because the ALJ incorrectly applied the controlling regulations, it is impossible to determine whether substance abuse was a contributing factor material to the determination of disability.**

First, Reid argues that the ALJ's decision is not supported by substantial evidence because Reid met his burden to prove that drug and alcohol addiction were not contributing factors material to his disability.

When a claimant is found to be disabled and medical evidence of drug addiction or alcoholism exists, the ALJ must engage in a required analysis to determine whether the drug and/or alcohol addiction is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535, 416.935. The controlling regulations provide:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Id. In challenging an application of the above framework, "the claimant bears the burden of proving that drug and alcohol addiction is not a contributing factor material to his disability." Parra v. Astrue, 481 F.3d 742, 758 (9th Cir. 2007).

In Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001), the Ninth Circuit provided guidance in interpreting and applying sections 404.1535 and 416.935. The court explained the process as follows:

> In performing the analysis pursuant to sections 404.1535 and 416.935, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism,' then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs."

Bustamante, 262 F.3d at 955 (citing 20 C.F.R. §§ 404.1535, 416.935); see also Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir.2003) ("The plain text of the relevant regulation requires the ALJ first to determine whether [claimant] is disabled . . . without segregating out any effects that might be due to substance abuse disorders. . . . If the gross total of a claimant's limitations, including the effect of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."). Further, it is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled. Bustamante, 262 F.3d at 955-56; see also Brueggemann, 348 F.3d at 694-95 (ALJ committed legal error in attempting to segregate

11

out effects of claimant's substance abuse before assessing whether claimant is disabled).

In Lindsay v. Barnhart, 370 F.Supp.2d 1036, 1044 (C.D. Cal 2005), the ALJ concluded that the claimant's impairments were severe considering the effects of his alcohol abuse, but absent such effects his residual impairment would probably be non-severe. The court disapproved, stating that

> "[a] review of the ALJ's decision shows that in Step Three, the ALJ segregated out plaintiff's alcoholism from his remaining symptoms, see A.R. 18 ('Absent the claimant's alcohol abuse, [his] medically determinable impairments have never met or medically equaled one of the listed impairments. . . .'), and then determined in Step Four, based on that segregation, that plaintiff retained the residual functional capacity to perform his past relevant work as a stock clerk. In so doing, the ALJ committed legal error in failing to consider whether plaintiff was disabled without removing plaintiff's alcoholism from the equation."

Id. at 1044.

Similarly here, at step three, prior to determining Reid's RFC, the ALJ concluded that

> Considering the effects of substance abuse, claimant has the following restrictions: In activities of daily living, the claimant has moderate restriction. In social functioning, the claimant has mild difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

> Without substance abuse claimant has the following restrictions: moderate restriction in activities of daily living; mild restriction in social functioning; mild restrictions in concentration, persistence and pace and no episodes of decompensation.

A.T. 15. The ALJ then performed the remaining steps of his analysis. A.T. 15-22. In analyzing Reid's impairments both with and without the effects of substance abuse, the ALJ "failed to consider whether [Reid] was disabled without removing [Reid's] alcoholism [or drug addiction] from the equation." See Lindsay, F.Supp.2d at 1044. Thus, because the ALJ segregated the effects of substance use before concluding his disability analysis, he improperly applied the relevant law.

Moreover, the ALJ did not conduct the remainder of the five-step analysis "without separating out the impact of alcoholism or drug addiction" before determining whether Reid

12

was disabled. See Bustamante, 262 F.3d at 949. Instead, at step four, the ALJ determined Reid's RFC both with and without the effects of substance abuse, before turning to step five to conduct the vocational analysis. As a result, the first hypothetical the ALJ posed to the vocational expert requested that the vocational expert opine "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity *without the effects of alcohol abuse.*" A.T. 22 (emphasis added). Thus, the ALJ considered the effects of drug and alcohol usage throughout his analysis, before determining whether Reid was disabled. Accordingly, the ALJ incorrectly applied the standard set forth under sections 404.1535 and 416.935.

Even if the court assumed, however, that the ALJ's ultimate conclusion would remain unchanged had he not segregated Reid's substance use and instead only calculated a single RFC that included the effects of substance abuse, the ALJ nevertheless failed to adequately explain his conclusion that substance abuse was a material component of his disability determination. While the record contains ample evidence that Reid has a history of substance use, the ALJ did not explain, nor cite evidence indicating, how and to what extent Reid's substance abuse contributed to his disability status. The ALJ simply determined one RFC with the effects of substance abuse, and another RFC without those effects, without explaining how he computed the different restrictions. The ALJ was required to first determine whether Reid was disabled; then, upon a finding of disability, thoroughly assess whether substance abuse was a material component of the disability finding by determining whether Reid's remaining limitations are disabling. See 20 C.F.R. §§ 404.1535, 416.935. Instead, in making his disability determination, the ALJ ignored all other symptoms or limitations and focused exclusively on the extent of Reid's alcohol and drug use, rather than the impact of that use on other impairments.

Specifically, Dr. Albucher, Reid's treating physician, stated in a December 13, 2007 questionnaire that Reid exhibited the following symptoms: major depressive disorder with mild psychotic features, paranoia, trouble with focus and concentration, moderate limitation in activities of daily living and social functioning, and marked limitation in maintaining

13

concentration, persistence and pace.  A.T. 345.  However, the ALJ did not discuss which of these limitations, many of which are not inconsistent with his own determination, would remain if Reid stopped using drugs and/or alcohol, and whether those limitations would be disabling.  Indeed, the ALJ stated in his opinion that "the undersigned concludes that even if claimant has been clean and sober since July 13, 2007, he has not remained so for a sufficient period of time to determine whether or not his symptoms are the basis of an independent mental disorder, or as a result of his substance abuse."  A.T. 20.  Yet the ALJ nevertheless concluded that "substance abuse would be material to a finding of disability."  A.T. 22.  As a result, it is impossible to determine from the ALJ's analysis to what extent Reid's substance abuse impacted his symptoms and, consequently, the disability determination.

Accordingly, the ALJ failed to follow the applicable legal standards, and the court cannot as a consequence determine if there is substantial evidence supporting his determination.

**2.      The ALJ improperly ignored part of Dr. Albucher's December 13, 2007 opinion.**

Next, Reid argues that the ALJ improperly discounted the December 13, 2007 opinion of his treating physician, Dr. Albucher.

Under Ninth Circuit law, an ALJ should give more weight to a treating doctor's opinion than the opinions of doctors who do not treat the claimant.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  More specifically,

> [w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. . . . Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. . . . This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. . . . The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  Reddick, 157 F.3d at 725 (internal quotations omitted).

14

The ALJ reasonably accorded less weight to Dr. Albucher's determination that Reid's substance abuse problem was in remission, because of Reid's history of untruthfulness to medical professionals regarding his substance use, and because Dr. Albucher was not monitoring Reid's level of substance use through urine toxicology testing. Thus, the ALJ provided "specific and legitimate reasons supported by substantial evidence" for disregarding Dr. Albucher's opinion regarding Reid's level of substance use during the period of July through December 2007. See Reddick, 157 F.3d at 725.

However, the ALJ provided no explanation for disregarding Dr. Albucher's opinion, set forth in the same December 13, 2007 questionnaire, that "[s]ymptoms would exist regardless of use." A.T. 19. This statement by Dr. Albucher is highly relevant in determining, at least for the period of July through December 2007, whether "drug addiction or alcoholism [was] a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935. Indeed, this appears to be the only evidence in the record attempting to evaluate the impact of Reid's substance abuse on his impairments and restrictions. Thus, the ALJ should not have ignored this statement without explanation.

Moreover, the ALJ did not rely upon any other evidence in the record contradicting Dr. Albucher's opinion that Reid's symptoms would exist regardless of substance use. Dr. Jonas, the medical expert, testified that the record showed active substance abuse through May 2007, but did not provide an opinion regarding substance abuse subsequent to that date. Thus, Dr. Albucher's opinion that substance use would not affect Reid's symptoms – which included major depressive disorder with mild psychotic features, paranoia, trouble with focus and concentration, moderate limitation in activities of daily living and social functioning, and marked limitation in maintaining concentration, persistence and pace – is uncontested in the record. Accordingly, the ALJ improperly disregarded the opinion of treating physician Dr. Albucher.

**3.     The court remands this case for further proceedings.**

The final issue is whether the court should remand the case for further proceedings or simply award benefits. The decision whether to remand a case for additional evidence

15

or award benefits is within the discretion of the court. <u>Reddick</u>, 157 F.3d at 728. A remand for further proceedings is unnecessary where the record is fully developed and there are no outstanding issues that must be resolved before a proper disability determination can be made. <u>Varney v. Sec'y of Health and Human Servs.</u>, 859 F.2d 1396, 1399 (9th Cir. 1988); <u>see</u> <u>also</u> <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989) (directing an award of benefits where further proceedings would serve no useful purpose).

Further proceedings are necessary to ensure that the ALJ properly complies with sections 404.1535 and 416.935 in determining whether alcohol and/or drug abuse constitutes a material contribution to the disability determination. On remand, the ALJ should (1) identify which of Reid's current limitations, upon which the ALJ based his disability determination, would remain if Reid stopped using drugs and/or alcohol; and (2) determine whether any or all of Reid's remaining limitations would be disabling. If the ALJ finds that the remaining limitations would not be disabling, he should find that Reid is not disabled. If, however, the ALJ determines that the remaining limitations are disabling, he should find that Reid is disabled independent of any drug or alcohol addiction. See 12 C.F.R. §§ 404.1535, 416.935.

In addition, remand is necessary to enable the ALJ to consider Dr. Albucher's opinion that Reid's symptoms would exist regardless of substance abuse. In <u>Lester v. Chater</u>, 81 F.3d 821, 832 (9th Cir. 1995), the ALJ rejected the opinion of an examining psychologist based on the conflicting testimony of a medical advisor who had not examined the claimant, and also because the psychologist's opinion was based on limited observation. The Ninth Circuit found that these reasons were insufficient. <u>Id</u>. at 834.

Similarly, in <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th Cir. 2006), the ALJ rejected the opinion of an examining physician because of (1) an inconsistency in the report; (2) a lack of corroborating evidence in the record; and (3) the claimant's failure to mention the specific disability in question in his disability claim. The Ninth Circuit also found these reasons to be inadequate. <u>Id</u>. at 1069.

16

In this case, the ALJ's bases for rejecting the above-referenced portion of Dr. Albucher's opinion were even less substantial than those of the ALJs in Lester and Widmark. As discussed above, the ALJ here provided no explanation for disregarding Dr. Albucher's statement that Reid's symptoms would exist regardless of alcohol or drug use. A.T. 22. Accordingly, on remand, the ALJ should consider this portion of Dr. Albucher's opinion in his analysis.

## CONCLUSION

For the foregoing reasons, the court REMANDS this case for further proceedings. Specifically, the court finds that (1) the ALJ did not properly follow the procedure set forth in 12 C.F.R. sections 404.1535 and 416.935 for determining whether alcohol and/or drug abuse constitutes a material contribution to the disability determination; and (2) the ALJ improperly ignored Dr. Albucher's opinion that Reid's symptoms would exist regardless of substance use.

This order fully adjudicates the motions listed at numbers eighteen and twenty-three of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 23, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge